VULCAN MATERIALS COMPANY and its division, Frontier Chemical Company, and J. C. Fuqua and wife, Allie Harlien Fuqua, Appellants,

v.

Miles WARLICK et al., Appellees.

No. 5619.

Court of Civil Appeals of Texas.

El Paso.

Jan. 29, 1964.

Rehearing Denied Feb. 19, 1964.

Evans, Pharr, Trout & Jones, Charles B. Jones, Crenshaw, Dupree & Milam and Joe H. Nagy, Lubbock, for appellants.

Willis E. Gresham, Jr., Karl Cayton, Lamesa, Blanchard & Clifford, Lubbock, McDonald, Shafer & Gilliland, Odessa, for appellees.

FRASER, Chief Justice.

This suit arose out of a collision that occurred between an automobile operated by appellant Mrs. Allie Fuqua, and a large chemical transport tank truck and semi-trailer which was being driven by Clarence C. Young, who was an employee of the appellant Vulcan Materials Company and Frontier Chemical Company, a division thereof. The collision occurred at about 2:15 or 2:20 A.M., July 28, 1960. After the collision the truck proceeded, according to the record, about sixty feet through the intersection and into the cafe building owned by Mrs. Lindley and operated as a cafe by Miles Warlick, causing extensive damage by fire and collision. The collision appears to have happened at the intersection, as the truck of the defendant Vulcan Materials Company was proceeding south and the Fuqua car was proceeding north on Highway 385, in the center of Seminole, Gaines County, Texas. The truck driver was the only occupant of the truck. Mrs. Fuqua was driving the Fuqua car. Her husband was in the front seat, but testified

that he did not see the accident, as he was turned, attempting to awaken a friend in the back seat at the time of the collision.

The jury did not find that there was any sole proximate cause of this accident, but it did find that Mrs. Fuqua failed to keep a proper lookout; failed to have her vehicle under proper control, and failed to turn her vehicle to the right to avoid striking the defendant's truck; and that she drove her vehicle to the left of the center of the highway. The jury found all of these facts to be negligent, and each a proximate cause of the fire.

The jury found that Clarence Young, the driver of the truck, failed to apply his brakes in time to avoid striking the building in question, and that such was negligence and a proximate cause of the fire. The jury further found that just prior to the collision, the said driver, Clarence Young, *was not confronted with a sudden emergency.* The court rendered judgment in favor of Mrs. Lindley and Miles Warlick against Vulcan Materials Company and Mr. and Mrs. Fuqua, as joint tort-feasors, and further ordered that Vulcan Materials Company do have and recover indemnity against Mr. and Mrs. Fuqua.

■ Appellant Vulcan Materials Company alleges error in that there was no evidence to support the finding of the jury that the failure of Clarence Young to apply the brakes was negligence; that such finding was contrary to the overwhelming weight of the evidence; that there was no evidence to support the finding of the jury that the failure of Clarence Young to apply brakes in time to avoid striking the building was the proximate cause of the fire; and lastly, that the finding of the jury that Clarence Young's failure to stop the truck was a proximate cause of the fire is contrary to the overwhelming weight of the evidence.

We feel that these points must all be overruled for the following reasons. It appears from the testimony that Mrs. Fuqua did hit the left-hand side of the defendant truck and, as she said, hung her bumper in the gas tank, or the step-up on the gas tank. She claims that all she saw was smoke billowing up. The driver of the truck testified that he was going from 16 to 18 miles an hour; also, that fire appeared immediately upon the happening of the collision. The record shows that it would have taken him from 1½ to 3½ to 4 seconds to traverse the sixty feet between the front of his truck and the cafe. There is no proof or allegation that the truck driver was violating any law or ordinance in regard to driving. The driver testified that immediately on the collision, flames came up on the left-hand or driver's side of the truck, and that he immediately began to get out on the right-hand side of the truck, and that while he was doing that he attempted to stop the truck with the foot brake, but that his foot slipped off, and as the truck hit the cafe building he then "bailed out." However, bearing in mind that the jury found he was not confronted with a sudden emergency, his own testimony becomes important because there were no eye witnesses other than the participants. The driver testified that the first thing he thought of was whether or not his tank of muriatic acid had ruptured, and he immediately decided that it had not. He described the hand brake as a device under the steering wheel, and one had to hit it or flip it down and it would then lock the wheels of the trailer. He testified that he applied the foot brakes because he thought they were more effective, as they applied to all the wheels, and further said that while they would only lock as long as his foot was on the brake, he felt he could stop the truck that way, and that he did stay with it until it stopped when it hit the building. But he further testified that if he had applied the hand brake he doubted that he would have run into the cafe. The following is taken from the Statement of Facts:

"Q. All right, fine. In other words, the truck had already run into

Mr. Warlick's Cafe before you got out?

"A.   Yes, sir.

"Q.   All right, fine.   Now, is it your testimony then that if you had applied the hand brake you would have still run into Mr. Warlick's building?

"A.   I doubt if it would have.

"Q.   You don't think it would have?

"A.   It is possible it would have stopped first.

"Q.   Well, now as a matter of fact, Mr. Young, you had been driving trucks for years?

"A.   Yes, sir.

"Q.   And you say you were driving at a very slow rate of speed?

"A.   Yes, sir.

"Q.   Now isn't it a fact that in your best judgment as you sit there right now, that if you had flipped that hand brake there it would have stopped it and Mr. Warlick wouldn't have been burned out?

"A.   It is a possibility, yes, sir.

"Q.   Isn't that a possibility that would have happened?

"A.   Yes, sir.

"Q.   It is more a possibility, it is more than a possibility that is what you think, isn't it?

"A.   Yes, sir.

"Q.   Now instead of applying the hand brake there you applied the foot brake.   Now, Mr. Young, if you had applied the foot brake, which applied to more than the hand brake did, and in your opinion if you had flipped that switch on the hand brake it would have stopped it, how do you explain the fact that with you riding that truck all the way into Mr. Miles Warlick's building it didn't stop it with your foot on the foot brake?

"A.   I will be glad to explain that.

"Q.   All right, I wish you would?

"A.   When this flame came into the truck and it was still moving I immediately moved away from that.   I tried the brake twice with my left foot.   My main interest then was getting out of it because it was hot.

"Q.   I thought you said you rode that truck until it ran into the building?

"A.   I did.   I didn't say I got out of it.

"Q.   If you had time to sit there in the cab and ride that truck going at that very slow rate of speed all the way across over here and into the building, why is it that you couldn't have thought to apply that hand brake and forgot about your foot?

"A.   The foot brake is more effective than a hand brake.

"Q.   I know that, Mr. Young.   You have already testified—

"MR. JONES:   I think he ought to be allowed to answer the question.

"THE COURT:   Have you finished your answer to his question?

"THE WITNESS:   No, sir.

"THE COURT:   Go ahead.

"Q.   (By Mr. Cayton)   Mr. Young, go ahead and finish that answer.

"A.   You asked me about the distance I traveled from back to the car and my truck until the impact of the truck into the cafe, did you not?

"Q. That was some time ago.

"A. I want to explain about the braking situation. As I moved over, when this tank exploded in this truck and this fire came into it, and the wind was coming from the south direction, this fire was completely over me, just a big arc of it, and I was under it and I moved away from it. That put me a straddle of my gear shift in the floor board of the truck. My right one was on the right side of the gear, and that is why it slipped off. I made two attempts for it. In the meantime, the truck rumbled along until it hit the building and when it did the fire went into the building and I bailed out.

"Q. The question I asked you, I believe, is this: it would have been easier for you to have flipped that hand brake up there than it would have been for you to be fighting that foot brake with your left foot, wouldn't it?

"A. Yes, sir.

"Q. All right. And if you had hit that hand brake Mr. Miles Warlick would probably still have had a cafe the next morning?

"A. Yes, sir."

Mr. Young further testified as follows:

"Q. Now, were you injured in this collision, or the impact with the Fuqua car?

"A. No, sir.

"Q. You had full possession and control of all of your mental faculties at that time?

"A. Except it hit, that is all, and the scorched cap. It scorched my cap and my face on the left side. That is why I moved over, sir."

From the above testimony it appears to us that there was sufficient evidence to warrant and substantiate the jury's answer to the effect that Mr. Young failed to apply his brakes in time to avoid striking the building that was burned, and that such failure was negligence and such negligence was a proximate cause of the fire in question. We will not elaborate on the testimony set forth above, as it is self-explanatory. No error seems to have been alleged in the jury's finding that Mr. Young was not confronted with a sudden emergency.

Therefore, on the basis of the testimony as set forth herein and the record as a whole, we feel that we must overrule the four points of error that appellant has set forth.

The Fuquas do not appeal, apparently, from the judgment against them as joint tort-feasors, but they do appeal from that part of the judgment granting Vulcan Materials Company indemnity against J. C. Fuqua and wife, Allie Harlien Fuqua, for such amounts as the Vulcan Materials Company might be required to pay under the terms of this judgment.

■■ We think this point is well taken and must be sustained. Under Article 2212, Vernon's Ann.Civ.St., and cases cited thereunder, each active joint tort-feasor stands in pari delicto with the other, and each, under the statute, is liable for the damages arising from the accident caused by their wrongful conduct. Landess v. Thomas, Tex.Civ.App., 343 S.W.2d 504, and cases cited thereunder. Austin Road Co. v. Pope et al., 147 Tex. 430, 216 S.W.2d 563 (Texas Supreme Court, 1949). We think these cited cases point up the difference between active joint tort-feasors and one who is guilty of only passive negligence. Here the jury found, based doubtless on the testimony of Mr. Clarence Young, that he was guilty of an error in judgment amounting to negligence, which was a proximate cause of the fire, all of which happened after the collision.

We therefore grant the point of error presented by Mr. J. C. Fuqua and wife, Allie Harlien Fuqua.

For the above reasons the judgment of the trial court is reformed, in that defendant Vulcan Materials Company shall not be entitled to indemnity against Mr. and Mrs. Fuqua, and that part of the judgment of the trial court so ordering is hereby reversed and rendered. The plaintiffs shall therefore have their judgments against Vulcan Materials Company and Mr. and Mrs. Fuqua.

As so reformed, the judgment of the trial court is in all things affirmed.